## SUPREME JUDICIAL COURT,

#### FOR THE COUNTY OF

### CUMBERLAND.

### *MAY TERM,*

### *1825.*

#### WILLIAMS & AL. *vs.* GILMAN.

The usages adopted by the individuals employed in any particular course of business, become as to them, the rules by which their contracts relative to that business are to be construed.

A usage among printers and booksellers, that a printer, contracting to print for a bookseller a certain number of copies of any work, is not at liberty to print from the same types while standing, an *extra* number for his own disposal, is not an unreasonable usage, nor in restraint of trade.

Where a printer, having contracted to print for his employer a thousand copies of a book, and no more, printed from the same types, while set up at the expense of his employer, five hundred other copies for his own disposal, he was held liable to refund to his employer one third part of the expense of setting up the types, no actual damage having been proved.

Where there has been evidence on both sides, which the jury have considered, *quære* whether the Court will set aside the verdict as being against the weight of evidence.

THIS was an action of trespass on the case, brought by the plaintiffs, who were booksellers in *Boston*, against the defendant, a printer in *Hallowell*, in which they alleged that they contracted with and paid the defendant for the printing *an edition* of Taylor's Holy Living, to consist of one thousand copies *and no more*; the *whole* of which edition was to be delivered to the plaintiffs; but that the defendant, in violation of good faith, printed fifteen hundred copies of the work, subducting five hundred copies thereof,

and disposing of them to his own use, thereby overstocking the market, enabling himself to undersell the plaintiffs, and depriving them of the benefit of the contract.

At the trial which was upon the general issue, before *Weston* J. the plaintiffs produced several letters of the defendant which proved the contract to print an edition of a thousand copies of the work; and also proved that they had paid the defendant for setting the types and for all other charges relative to the contract;—and for proof of an engagement on the part of the defendant to print no more than the stipulated number, they relied on the usage among printers and booksellers.

To establish this usage many depositions were read in which printers and booksellers in this and the neighboring states testified to that point;—some of them stating that it was a general usage and considered a governing principle among them, that when one contracted to print an edition of any work, consisting of a certain number of copies, he was not at liberty to print any more from the same types on his private account;—that a person learning the trade in one State would of course become acquainted with the usage in that and the neighboring States;—that the intercourse between *Boston* and *Hallowell* was close and frequent;—and that the fact of five hundred extra copies being in existence, would injure the sale of the thousand copies. There was some testimony tending to shew that this usage did not apply to schoolbooks. The testimony of some other deponents, resident in *Maine*, appeared to negative the existence of any such usage in *Hallowell*.

It further appeared that the defendant had sold two hundred and fifty of his extra copies;—that two thirds of the plaintiffs' edition were gone from their store before the trial of this cause;—and that five years was a reasonable time for the sale in *Boston* of a thousand copies of this work. There was no proof of actual damage to the plaintiffs in the sale of their books from any act of the defendant; and it was proved that while the work was in sheets one of the plaintiffs inquired of a witness if there had been any extra copies printed; and being told that there were five hundred, he made no objection.

Upon this evidence the Judge instructed the jury that if it was proved to their satisfaction that by the usage among printers and

booksellers it was considered a part of the contract, whether stipulated expressly or not, that a printer, undertaking to print any number of copies of a book, the copy right whereof is not secured by law, is not at liberty without the assent of his employer, to print, on his own account, any extra copies from the types while standing, set up at the expense of his employer, the contract to this effect set forth in the declaration might be considered as proved.—That in this case, if they found the usage proved, the contract being to print one thousand copies of *Taylor's* Holy Living in sheets for the plaintiffs, and it appearing that the defendant had printed from the same types, while standing, five hundred extra copies for himself, the proper measure of damages would be one third of the expense of setting up the types:—That it was a legal usage, not in restraint of trade, nor of the mechanic arts, nor was it unreasonable; but that it was necessary that the usage should be proved to be general among printers and booksellers, and well known in *Hallowell*, where the work was done, as well as in *Boston*; in which latter place the contract must be considered as much made as in the former.

The jury hereupon found a verdict of fifty dollars for the plaintiffs; and the question as to the correctness of the Judge's instructions was reserved for the opinion of the whole Court. The defendant also filed a motion at common law to set aside the verdict as being manifestly against the weight of evidence in the cause.

*Emery* and *Orr* for the defendant.

The defendant having performed all which he expressly stipulated to do, the claim of the plaintiffs to any further duty is founded on some supposed usage or custom governing all contracts of this description.

But no such usage is found in the case. The deponents in *Maine* expressly deny its existence in *Hallowell* where the defendant resided; and its universality being thus disproved, it is as nothing. If the plaintiff contracted with reference to places where such usage prevailed, the defendant may well be supposed to refer to a place where it did not. *Baker v. Wheaton* 5 *Mass.* 509. *Smith v. Smith* 2 *Johns.* 235. 3 *Caines* 154.

If there be such a universal usage, it is bad ;—because it has not existed *time out of mind* ; the commencement of printing in this State being within the memory of the present generation, and within sixty years. It is also bad for uncertainty ; for it is proved not to extend to school-books ; and yet nothing can be less certain than this term, whether regard is had to the kind of the school or place of instruction, or to the almost endless variety and unceasing succession of books used in them all. *Selby v. Robinson 2 D. & E.* 758.

It is also bad as being in restraint of trade and the mechanic arts, and as being unreasonable, and tending to monopoly. It is true the defendant might, for a valuable consideration, have entered into a contract not to print more than a stipulated number. But the plaintiffs in this case seek to restrain all printers, in all cases ; against the right which every mechanic possesses, at common law, to exercise his trade to the extent of his ability. He may renounce this right, for a fair equivalent ; but the law does not renounce it for him. Besides, the prices of books are already enormous, in consequence of combinations known to exist among booksellers, by means of which they are enabled, in practice, to create monopolies almost at their pleasure, and to exclude all others from a fair and open competition with them in the market. And to countenance the usage now contended for, is but to encourage and legalize such impositions. *Reimsdyck v. Kane* 1 *Gal.* 371. *Dav.* 87, *case of Tanistry.*

But if the plaintiffs could have availed themselves of such a custom, and it were part of this contract, that right appears to have been waived by one of them, he having silently assented to the act of the defendant, of which they now complain.

At all events, the rule of damages, as stated to the jury, was erroneous. They should have been instructed to give the plaintiffs no greater sum in damages than they proved themselves to have sustained ; which, in this case, were merely nominal ; or, at most, to award only the profits actually made by the defendant. *Miller v. Taylor* 4 *Burr.* 2319.

And they contended that the verdict was manifestly against the weight of evidence in the cause.

*Greenleaf*, for the plaintiffs.

The usages adopted by printers and booksellers in the course of their business, become, as to them, the rules by which their contracts are to be construed. *Homer v. Dorr* 10 *Mass.* 26. *Smith v. Whiting* 12 *Masss.* 6. *Lincoln & Kennebec Bank v. Page* 9 *Mass.* 155. *Weld v. Gorham* 10 *Mass.* 366.

The contract in this case was not local, it being made by letter, and to be performed as well in *Boston* as in *Hallowell* ;—and it is to be governed by the general usage of the trade, which is personal, and not local. And it is a reasonable usage, its effect being to bring the parties into the market on a footing of perfect equality. For if the setting up of the types is to be *wholly* charged to the plaintiffs, the defendant can retail his books, at a profit, for less than the *cost* of the plaintiffs' books. The existence of the usage, and its generality, are found by the jury.

Where there is evidence on *both sides*, the Court will not set aside a verdict as being against the weight of evidence ; even though the Judges might, if on the jury, have come to a different result. *Anon.* 1 *Wils.* 22. *Swain v. Hall* 3 *Wils.* 45. *Smith v. Parkhurst* 2 *Strα.* 1105. *Ashley v. Ashley* 2 *Stra.* 1142. *Smith v. Higgins & al.* 2 *Stra.* 1142. *De Fonclear v. Shottenkirk* 3 *Johns.* 170. *Ward v. Center* 3 *Johns.* 271. *Pierce v. Butler* 14 *Mass.* 310. *Cowperthwaite v. Jones & al.* 2 *Dal.* 55. *Walker v. Smith* 4 *Dal.* 389. *Pike v. Evans* 15 *Johns.* 210.

Nor will the Court set aside a verdict for the plaintiff, where, from the amount of the recovery, he is liable to pay costs to the defendant ; as is the case here, the plaintiffs having appealed from the Court below, and the verdict in this Court being less than a hundred dollars. *Hurst v. Burrell* 5 *Johns.* 137.

MELLEN C. J. delivered the opinion of the Court, as follows.

The motion in this case for a new trial is founded on an alleged misdirection of the Judge to the jury ; and because the verdict is supposed to be greatly against the weight of evidence.

The Judge instructed the jury, that if there was such a custom or usage proved as was contended by the plaintiff, and that it was general among printers and booksellers, and well known in *Hallow-*

*ell* as well as *Boston* ; then the contract might be considered as proved. It certainly is a very plain principle of law, that contracts should be construed according to the intention of the parties, as far as that can be done. Hence, a contract made and to be executed in *New-York*, must be construed according to the laws of that State ; because the parties are presumed to have been acquainted with those laws and to have made their contract with reference to them ; and our Courts, in deciding on that contract, would construe it in the same manner as the Courts of the State of *New-York*. So if in a particular branch or kind of business, certain usages exist which are well known to those connected with it, those who make contracts in relation to such transactions, are always presumed to have made the contract in reference to such usages; and of course, these are deemed to form a part of the contract, as much as though actually incorporated into it, or expressly referred to. Numerous cases have established this principle;—and it is not denied by the counsel, as applicable to the law of insurance and the transactions between banks and those in the habit of doing business with or at such banks. But the counsel for the defendant have treated this usage among printers and booksellers as a custom ; such as we find described in our law books ; and have contended that to be valid it must have existed for time immemorial, uninterrupted, definite, reasonable, &c. We apprehend that the law of local customs is not applicable in this case. The usage relied on has nothing local in its nature ; it relates to a certain class of people spread through the country, and to the peculiar business in which they are employed. And we cannot distinguish it from those other usages we have mentioned. Usages are to be found among numerous classes of people in relation to their particular trades ; and they are always to be attended to in deciding questions touching their concerns. We therefore can perceive nothing incorrect in the instructions given by the Judge to the jury on this point.

But it is said such a custom or usage is in restraint of trade. The counsel has answered this objection himself ; for he admits that in many cases the printer expressly agrees not to print any surplus copies, and that such an agreement is lawful. Now, if an

express agreement of this kind is not unlawful, as being in restraint of trade, why should the agreement be unlawful if made by reference to the usage ?    There cannot be any legal distinction between the cases.    The instructions on this head also are approved ; and the verdict cannot be impeached on account of the opinion of the Judge touching the rule of damages.

The next inquiry is whether the verdict is greatly against the weight of evidence.  There was a great body of proof laid before the jury as to the nature, extent, generality and knowledge among all printers and booksellers of the usage in question ;  and though some of the defendant's witnesses, or most of them,  testify their ignorance of the usage at *Hallowell* ; yet they also say they have known only a few instances of surplus copies of small works.  On the other hand numerous witnesses have testified that the usage is general in the country, and perfectly well known among all concerned ; and it appears that the defendant for many years worked in a printing office in *Exeter*, in *New-Hampshire*, before he settled in *Hallowell*.   All this evidence the jury have examined, and have by their verdict decided that the usage was known at *Hallowell*, as well as *Boston*.    On the whole, we do not feel at liberty to disturb the verdict for any of the reasons which have been urged.

*Judgment on the verdict.*